## James Newsom v. Abraham Hart.

*Property—Summary proceeding.* The power to divest another of his property by a summary and ex parte proceeding, must be strictly pursued.

*Estrays—Freeholders.* Under sec. 1605 of the Compiled Laws, the right to take up estrays, is confined to the "resident freeholders of the township" in which such estrays are found. It involves the exercise of a personal discretion, and cannot be delegated.

*Trespass by minor—effect of ratification by father.* Where a minor son takes up an estray without the consent or knowledge of his father, he becomes a trespasser, and the subsequent ratification of such act by the father, confirms the trespass merely. It establishes no ground upon which to found title to the property.

*Heard April 11th. Decided April 24th.*

Error to Wayne Circuit.

This was an action of replevin, brought by the plaintiff against the defendant, for one horse pony.

The plaintiff declared against the defendant for the unlawful detention of the said horse pony; the defendant plead the general issue. The cause was tried by the court upon the following stipulation:

"It is stipulated and agreed that the pony in question was the property of the plaintiff at the time of the alleged taking up on a public road, in the township of Southfield, Oakland County, Michigan; that such taking up was by a minor son of one Jonathan W. White, a resident and freeholder of said township; that said son was not a freeholder of Southfield or elsewhere, but that he resided with his father, and was a member of his family; that said taking up was not done in the presence, or with the immediate knowledge or consent of said White; that White did not know of it, until informed by his said son during the day of the taking up; that he first saw the pony in his stable, where he had been placed by his said son; that White said on the trial of the cause in the Justice Court, 'that had he seen the pony at the time of the taking up, he would have set his dog on him and driven him away'; that White retained said pony in his possession, and afterwards sold him as an estray, by which sale he came into

the hands of the defendant; that when taken up, the said pony was unsaddled, unbridled and loose, and not in the charge of any person, and was apparently an estray.

That the only question is as to the legality of the taking up of said pony as an estray by White's son, as aforesaid, and whether such taking up was sufficient to authorize the further proceedings to sell him as such estray, so as to convey the property of the pony to the vendee on said sale.

WARD & PALMER,                    WM. Gray,
    Att'ys. for Plaintiff.            Att'y. for Defendant."

The Court found that the defendant did unlawfully detain, &c., as charged in the declaration, and rendered judgment in favor of the plaintiff.

*Wm. Gray*, for plaintiff in error.

By the statute, the right of taking up an estray, and selling, &c., is given only to a resident freeholder. — 1 *Comp. L.* § 1605.

In this case the actual taking of the pony from the highway, where he was straying, was done by the son of White, who was not a freeholder; but the case shows very plainly that he acted for his father; he was a minor and living with him; he placed him in the father's stable, and at once informed White, senior, of what he had done.

Previous to his acts the son had no authority from his father; but when advised of what had been done, the latter adopted and ratified his son's action, and proceeded to sell, &c.

The subsequent ratification relates back to the time when the agent acted, and leaves the matter as if the agent had original authority.—*Story on Agency*, §§ 239, 242. This rule extends to tortuous acts of the agent.—*Id.*, § 244.

Again, at the time that White, senior, found the pony in his barn, and took charge and control of him, he was still an estray under the provisions of sec. 3. It would be unreasonable to require that White should turn the pony loose for the

purpose of again driving him back to the barn. He knew he was an estray, and as such he retained and sold him.

*Ward & Palmer*, for defendant in error.

The right to sell estrays is only created by statute. — 1 *Comp. L. chap.* 47, *p.* 507. Authority to take the property of one man and transfer it to another, in an ex parte proceeding, is a simple naked power given by the statute, and no authority which is not expressly given, can be exercised.—6 *Mo.* 64–74, *and cases cited;* 2 *Mich.* 486–490; *Blackwell,* 45–58.

The statute authorizes "any resident freeholder of any township to take up any stray horses by him found going at large."—1 *Comp. L.* § 1605; and by § 1614 of the same act, it is provided that if "any person shall fail to comply with the act, he shall be precluded from the benefits thereof."

The decisions under similar acts have uniformly been, that there must be a strict compliance with the law.—3 *Mo.* 214; 8 *Id.* 344; 23 *Id.* 67.

If said minor was competent to take up the horse under the statute, then the law would compel him, as "such finder," to proceed and sell the horse as an estray; and the entries, notices and proceedings in the sale, in the name of J. W. White, would be irregular and void.—1 *Comp. L.* § 1606.

If said minor was not a competent person to take up the horse, before his acts were approved and recognized by the father, he was a trespasser in the act, and the father, assuming his acts, would thereby become a trespasser also, and all his act would be void.

Perhaps it will be contended that all the son did, was the act of the father, he being the general agent of the father.

Can the discretion of "taking up," authorized by statute to be exercised by particular persons—namely, "resident freeholders"—be delegated to an agent of immature years, not a freeholder, and if so, would it be such an act as a minor son would be authorized to do, within the scope of his ordinary

duties, "without the knowledge, consent or direction of the father?"

CHRISTIANCY J.

The horse having been taken up by the minor son who was not a freeholder, in the absence of the father, and without his previous knowledge or consent, such taking, it is admitted, would have been illegal if left to stand upon the act of the son. But the subsequent acts of the father, who was a freeholder, in retaining and selling the horse as an estray, it is insisted, operated as a ratification, and rendered the act of the son legal, as the act of his father.

The ratification is unequivocal, and so far as respects the father's liability for the act, was equivalent to a prior command. But here the ratification is set up as the basis of a right to divest the plaintiff of his property; and the plaintiff seeking to make title through the father, the question is the same as if the action had been brought against the father, and he had sought to hold the property on the ground of the ratification.

The power to divest another of his property by this summary and ex parte proceeding must be strictly pursued, and none of the safeguards which the statute has thrown around the exercise of the power can be disregarded. The statute has given the power only to "any resident freeholder of any township to take up any stray horses, &c., by him found going at large in such township." The object of the legislature in restricting the power to this class of persons we must suppose to have been to protect the rights of the owner of such property in every way that such a restriction might operate to that end. Other classes of persons might, as a general rule, be not only less able to respond for an abuse of the power, but less careful to inquire into the circumstances before exercising it; less discreet in making seizures, and more disposed to exercise the power under circumstances which would not call for its exercise, than freeholders against whom the same power might be exercised by their neighbors.

In this view, of the statute every owner is entitled, before his property shall be "taken up," to have the benefit of the knowledge and information of the freeholder, and to the exercise of his personal discretion and judgment upon the circumstances of the case, and his personal decision thereon. That this would in fact have operated as a protection against the seizure in the present case, is very probable from the evidence of the father's statement; but this is simply what the law would have presumed without this item of evidence. If the father seeing the property running at large, and observing and deciding for himself upon the propriety of taking it up, had directed the son merely to execute the act, this would have been the act of the father and not of the son, and the plaintiff would have had in this respect the protection which the statute intended to give him. But the propriety of the act was decided upon by the son, and the horse seized in the absence of the father, and without his knowledge or consent. The father had no right to substitute the information, judgment and discretion of the son for his own. The son was a mere trespasser; his act was illegal and void, and the subsequent ratification confirmed it only *as such*, as a void and illegal act, upon which no right to the property can be founded. — *Story on Agency*, §§ 241, 242; *Harrison v. McHenry*, 9 *Geo.* 164.

The judgment of the Circuit Court must be affirmed, with costs of both courts.

Campbell & Cooley JJ. concurred.

Martin Ch. J. dissenting. I think that the retention of the horse by the father was a full ratification of the son's act, and that the "taking up" must be considered his. If he had repudiated the act of the son, and turned the horse loose, upon learning of the son's act, the rule would be different. I think the judgment should be reversed.